# UNITED STATES of America, Plaintiff–Appellee,

v.

# Ernest James PERKINS, Defendant–Appellant.

## No. 88–5237.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 7, 1990.[*]

Decided July 1, 1991.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Philip Deitch, Los Angeles, Cal., for defendant-appellant.

Adam B. Schiff, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, Chief Judge, and O'SCANNLAIN and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Ernest Perkins appeals his conviction for bank robbery under 18 U.S.C. § 2113(a). Perkins claims the district court made several erroneous evidentiary rulings and improperly instructed the jury on consciousness of guilt and change of appearance. We affirm.

## I. Facts

On November 9, 1987, at approximately 12:40 p.m., a single black male approached Ms. Linda Purmont's teller window in the Southern California Bank in Whittier. The man, who had a moustache, wore a rust-colored suit with wide lapels and bell bottom pants and carried a maroon soft-sided briefcase. He then placed a pouch on the counter and pushed a note toward her which stated, "This is a robbery. I have a gun and want all your large money." As the teller started taking money out of her drawer, the man repeated that he had a gun and his demand for large bills. The

teller gave the man a total of $653 and activated the surveillance cameras as the robber left the bank.

On December 1, 1987, Perkins was indicted on four counts of bank robbery. On February 10, 1988, however, due to "certain evidentiary problems," the government moved to dismiss three of the four counts. Perkins opposed the motion on the ground that his trial preparation and defense strategy were based on the four count indictment. The district court granted the government's motion to dismiss, leaving Perkins to be tried only for the November 9 robbery of the Southern California Bank in Whittier. After a four-day trial in which the defendant testified, the jury found Perkins guilty. The district court denied Perkins's motion for a new trial and sentenced him to twelve years imprisonment.

## II. Evidence of Dismissed Robbery Counts

Perkins claims that the district court improperly denied his pretrial motion to introduce evidence under Fed.R.Evid. 404(b) of the dismissed robbery counts and contends that the district court's ruling precluded him from developing his theory of the case. Perkins argues that the distinct modus operandi of the four crimes shows that the same person committed all of the robberies and that because Perkins was at work during two of them he could not be the robber. Perkins stresses that the government initially proceeded against him on the theory that he committed each of the four charged robberies, and accordingly, he should be able to preserve the same theory of defense even after the government dismissed three of the counts.

■ The district court's decision to admit or exclude evidence and the balancing of probative value against prejudicial effect are reviewed for an abuse of discretion. *United States v. Kessi*, 868 F.2d 1097, 1107 (9th Cir.1989); *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir.), *cert. denied*, 447 U.S. 908, 100 S.Ct. 2993, 64 L.Ed.2d 858 (1980).

■ A defendant is entitled to introduce evidence which tends to prove someone else committed the crime. *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980); *Brannon*, 616 F.2d at 418. One way of proving mistaken identity is by showing that other crimes similar in detail have been committed at or about the same time by a person other than the defendant. Of course, the district court may exclude this evidence under Fed.R.Evid. 403, if it is likely to confuse the issues or mislead the jury.

■ The "identity" exception to Rule 404(b) requires that the characteristics of the other crime or act be "sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue." *United States v. Andrini*, 685 F.2d 1094, 1097 (9th Cir. 1982). "[I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise." *United States v. Powell*, 587 F.2d 443, 448 (9th Cir.1978).

■ The modus operandi of the dismissed counts is not sufficiently similar to the charged offense to support an inference of identity and warrant admission under Rule 404(b). The robberies all involved a man supposedly wearing various disguises (fake moustache, beard, glasses, etc.), approaching the teller with something to carry away money, handing the teller a note or making a statement requesting money, and warning the teller not to push any buttons. In the district court, Perkins seized on the fact that the robber used a tennis racket cover to carry the money away as a sufficiently distinctive feature of the crimes. However, while unusual, this alleged "signature" element was present in only two of the four robberies and not in the November 9 robbery for which Perkins was tried and ultimately convicted. While the same person may have committed the two "tennis racket cover" robberies, the similarity of those crimes says nothing about who committed the instant offense. The robbery at issue did not involve any "peculiar, unique, or bizarre" conduct so as

to constitute a personal signature; rather it was similar to most bank robberies. *See United States v. Ezzell,* 644 F.2d 1304, 1306 (9th Cir.1981) (quoting *Parker v. United States,* 400 F.2d 248, 252 (9th Cir. 1968)). "The points of similarity between the [two] robberies were ones which are so common to most bank robberies as to be entirely unhelpful.... [T]he requirements of Rule 404(b) were not met here." *Id.*

■ Moreover, even if the evidence was properly admissible under Rule 404(b), it must nevertheless undergo the probative-prejudice balancing required under Rule 403 and may be excluded if the jury is likely to be confused or misled. *Andrini,* 685 F.2d at 1097; *Brannon,* 616 F.2d at 418. The district court did not abuse its discretion in focusing the trial on the offense at issue, and not allowing the parties to stray and discuss the details of several extraneous robberies.

■ Perkins cannot transform the exclusion of this evidence into constitutional error by arguing that he was deprived of his right to present a defense. The right to present a defense is clearly fundamental, but "[i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 313 (1973). In this

case, the district court did not abuse its discretion by excluding the evidence as not probative of identity under Rule 404(b) and likely to mislead or confuse the jury under Rule 403. In any event, the district court did not deprive Perkins of the opportunity to present evidence critical to his defense; Perkins was permitted to, and did, present other evidence from which he could argue and the jury could infer that someone else committed the crime. Nor did the district court prevent Perkins from rebutting evidence introduced by the government.[1]

### III. Jury Instructions

■ Perkins contends that the district court erred in instructing the jury that it could consider false exculpatory statements and an alleged change of appearance as evidence of consciousness of guilt. The adequacy of jury instructions is determined by examining them in their entirety. *United States v. Feldman,* 788 F.2d 544, 555 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). The district court's decision to give a jury instruction is reviewed for abuse of discretion. *Id.*

### A. Consciousness of Guilt Instruction

■ The district court instructed the jury that false exculpatory statements could be considered as evidence of consciousness of guilt.[2] Perkins contends that

1. *Compare United States v. Whitman,* 771 F.2d 1348, 1351 (9th Cir.1985) (error to prevent defendant from rebutting evidence introduced by government from which jury might infer motive); *Armstrong,* 621 F.2d at 953 (error to exclude testimony that another man matching description of the robber used bait money to purchase a car), *with Perry v. Rushen,* 713 F.2d 1447, 1455 (9th Cir.1983) (state court's exclusion of evidence that third person committed other, similar crimes in same area and that third person arguably resembled defendant did not violate sixth and fourteenth amendments; evidence not "critical" or "so closely connected to the issue of [defendant's] guilt or innocence"), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984); *Brannon,* 616 F.2d at 418 (no abuse of discretion in excluding photographs of a third person when district court concluded that the person photographed did not resemble the defendant).

2. The court's instruction, taken from 1 Devitt & Blackmar, *Federal Jury Practice and Instructions,* § 15.12, was as follows:

 Conduct of a defendant, including statements knowingly made and acts knowingly done upon being informed that a crime has been committed, or upon being confronted with a criminal charge, may be considered by the jury in the light of all other evidence in the case in determining guilt or innocence.

 When a defendant voluntarily and intentionally offers an explanation or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt.

 Ordinarily it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

his questioning while visiting his parole officer at the U.S. Courthouse was not sufficiently confrontational regarding his involvement in a criminal charge to justify the giving of the instruction. We hold the instruction proper in this case.

Agent Dezihan, one of the arresting officers, testified that Perkins was advised of and signed a written waiver of his rights prior to questioning. Dezihan first asked Perkins "if he had been involved in any bank robberies." Perkins responded that he had not. The agent then inquired how Perkins got to the building and if Perkins owned a car. Perkins falsely responded that a friend, who had not parked but was "just driving around the building" dropped him off at the courthouse. Perkins also stated that he did not presently own a car because he had sold it. Following his arrest at the end of the interview, the officers discovered a blue Datsun registered to Perkins parked close to the building and found the keys to the car in his pocket.

If the jury credited Agent Dezihan's testimony, it could find that in response to the incriminating questions of an FBI agent, after waiving his *Miranda* rights, Perkins lied. Perkins's false exculpatory statements therefore properly could be considered as evidence of consciousness of guilt.

Perkins also challenges the instruction on the grounds that it permits the jury to consider the statements as evidence of *guilt*, rather than *consciousness of guilt*. The instruction does not instruct the jury that the conduct is evidence of guilt; rather, the instruction stresses that false state-

ments may be considered as circumstantial evidence of consciousness of guilt, and that it is up to the jury to determine the significance of the evidence. Perkins's reliance on *United States v. Di Stefano*, 555 F.2d 1094 (2d Cir.1977), is therefore misplaced. In *Di Stefano*, the instruction explicitly stated, "the jury may consider [the false statements] as circumstantial evidence of the defendant's guilt." *Id.* at 1104. Second, we have approved the use of this instruction on false exculpatory statements. *See United States v. Boekelman*, 594 F.2d 1238, 1240 (9th Cir.1979) (court noted approval of standard Devitt & Blackmar instruction and distinguished *Di Stefano* in upholding a variation from the standard instruction); *United States v. Wood*, 550 F.2d 435, 443 (9th Cir.1976).

## B. Change of Appearance Instruction

■■■■■ Perkins also claims the district court erred in instructing the jury that it could consider a defendant's change of appearance as evidence of consciousness of guilt.[3] The government justifies the instruction from the fact that the bank surveillance photographs show the robber to have a long, thick moustache, whereas the booking photograph of Perkins shows him to have only a small amount of growth over his lip. A flight instruction, modified for changes in appearance, is valid "only when the links along the extended chain of inference from the defendant's behavior to actual guilt of the crime charged are unbroken, and when the defendant's flight reaction is immediate to the crime." *Feldman*, 788 F.2d at 555.[4]

---

Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury. Reporter's Transcript (April 7, 1988), at 187–88.

**3.** This instruction, a modified flight instruction from 1 Devitt & Blackmar, *Federal Jury Practice and Instructions*, § 15.08, was as follows:

A defendant's intentional change of his appearance immediately after the commission of a crime or after he is accused of a crime that has been committed, is not, of course, sufficient in itself to establish his guilt, but may be considered by the jury in the light of

all other evidence in the case in determining guilt or innocence.

Whether or not evidence of a change of appearance shows a consciousness of guilt and the significance to be attached to any evidence, are matters exclusively within the province of the jury. Reporter's Transcript (April 7, 1988), at 189–90.

**4.** "[F]our inferences must be justified: '(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime

We agree that the record in this case does not contain facts supporting the instruction. A change of appearance instruction contemplates some independent evidence indicating that the *defendant himself* actually changed his appearance. Thus, when a defendant is known shortly after the commission of a crime to have cut his hair, shaved off facial hair, or changed his hair color, the jury can consider this as evidence of consciousness of guilt and consider it in light of the other evidence in deciding whether the defendant is guilty. *See United States v. McKinley,* 485 F.2d 1059, 1061 (D.C.Cir.1973) ("Another inference available from a change in appearance by someone who has been called to appear in a lineup is, simply, that the change reflects an awareness of guilt and fear of identification."). Without this kind of independent evidence, there is no basis for the trier of fact to infer that the defendant sitting in the courtroom ever evinced any consciousness of guilt.

A change of appearance instruction is not justified when there is evidence showing only that the *robber* may have changed his appearance or that the robber and the defendant at the time of his arrest have different appearances. In these instances, in order to decide that *the defendant* changed his appearance, it is necessary to decide that the defendant is in fact the robber. Any inference of consciousness of guilt is therefore unnecessary because the jury has already concluded the defendant is the perpetrator.

In this case, there is no evidence showing that Perkins changed his appearance. The bank surveillance photographs show the robber had a thick moustache and witness Chris Alamond testified that the man photographed in the bank surveillance pictures was the same man he saw leaving the bank, but that he "didn't recall any facial hair." This merely provides support for the inference that the robber may have been wearing a disguise, not that Perkins changed his appearance. Moreover, the fact that the booking photograph shows

Perkins to have only a small amount of growth over his lip, while the bank surveillance photographs show the robber to have a thick moustache indicates only that the robber and the defendant at his arrest have different appearances, not that Perkins recently shaved off a moustache. The record does not contain independent evidence that Perkins had a moustache prior to the robbery, or that he shaved off (or removed) a moustache at any time prior to his arrest. Accordingly, the district court improperly instructed the jury on change of appearance.

"While the district court's instruction was improper, this circuit has previously held that an inappropriate 'consciousness of guilt' instruction may amount to harmless error." *United States v. Wagner,* 834 F.2d 1474, 1485 (9th Cir.1987) (citing *Feldman* ). In *Feldman,* we concluded that the district court erroneously instructed the jury that it could consider the fact that the defendant shaved off his beard prior to trial as evidence of consciousness of guilt. Because the record demonstrated that Feldman shaved his beard nine months after his arrest, and at the request of his mother "to please her," the lack of any immediacy of Feldman's behavior rendered the chain of inferences to support the instruction "pitifully weak." *Feldman,* 788 F.2d at 555 & n. 14. Yet we concluded that "it is inconceivable that the instruction influenced the outcome of the trial, given the highly probative search and identification evidence" against the defendant. *Id.*

Despite the inappropriateness of the instruction in this case, we conclude any error was harmless. First, in order for the jury to have attached significance to any change of appearance, the jury already would have concluded that the defendant was the robber. Additionally, the consciousness of guilt inference which flows from any change of appearance was an inference which the jury could already draw from Perkins's false exculpatory statements concerning his ownership of the

charged to actual guilt of the crime charged.'" *United States v. Silverman,* 861 F.2d 571, 581 (9th Cir.1988) (quoting *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir.1977), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978)).

blue Datsun. *Cf. United States v. Brown,* 575 F.2d 746, 747 (9th Cir.1978) (per curiam) (no reversible error where only one example of flight in boilerplate instruction supported by the facts of the case). Moreover, the evidence the government presented showed that Alamond identified Perkins as the man he saw running from the bank and getting in a blue Datsun; the police found in the bank a parking citation issued to the blue Datsun which was registered to Perkins, and found a delinquent notice for the ticket in Perkins's apartment; Perkins lied about his ownership of the car when he actually drove the blue Datsun to the place where he was arrested and had the keys to that car in his pocket, showing his consciousness of guilt; and the police found in Perkins's apartment a rust-colored 1970's style suit and maroon briefcase matching those used in the robbery.[5] These considerations, taken together, convince us beyond a reasonable doubt that the instruction did not affect the verdict.[6]

### IV. Refusal to Allow Defense Counsel to Testify

■ Perkins challenges the district court's decision not to allow defense counsel to take the stand and respond to testimony concerning Perkins's out of court fitting of the suit allegedly used in the robbery. This issue was not properly preserved for appeal as the defense failed to make an adequate offer of proof. Defense counsel merely stated, "I am anxious to take the stand about Agent Fields's testimony." He did not indicate what his testimony would be, nor did he make the substance of the evidence known to the court. Perkins cannot now claim error on this ruling. Fed.R.Evid. 103(a)(2).

### V. Permitting Defendant's Parole Officer to Testify

■ The district court denied Perkins's motion to exclude the testimony of his parole officer, but ordered the government not to identify the officer's occupation. Despite the fact that the government never called the parole officer to testify, Perkins argues that the fact that the government had the right to do so "adversely dictated the defendant's trial strategy, in particular, the choice of taking the stand." According to Perkins, this was "tantamount to compelled self-incrimination," because Perkins would have to take the stand in order to "preemptively raise the fact that he was on parole...." We find no error in this ruling.

First, a parole officer can be called to testify when his occupation and professional relationship with the defendant are not mentioned. *See United States v. Langford,* 802 F.2d 1176, 1180 (9th Cir.1986) (parole officer called to identify the defendant as the person in bank surveillance photographs), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987); *United States v. Butcher,* 557 F.2d 666, 669 (9th Cir.1977) (police and parole officer identification of defendant proper). Even so, the government never called the parole officer; any complaint must therefore rest on the "self-incrimination" theory.

The fifth amendment privilege against self-incrimination applies, for example, to prosecution comments on a defendant's failure to testify, *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), and coercive police custodial interrogation, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

**5.** The dissent focuses on evidence relating to Harold McGee, a boarder in the same rooming house as Perkins. While the dissent characterizes McGee as having a "slim build" like Perkins, there was evidence that one of the arresting officers wrote in a report prepared at the time of the execution of the search warrant that McGee weighed over 200 pounds. Perkins's own testimony conceded that McGee's weight went up and down and that he looked "real bad" on the date of the arrest, though Perkins could not recall the exact weight. We therefore do not believe that speculation about McGee's complicity in the crime raises a reasonable doubt.

**6.** As the dissent points out, *post* at 1407 n. 2, it not always clear what level of scrutiny applies to erroneous jury instructions. *See, e.g., United States v. Valle–Valdez,* 554 F.2d 911, 914–17 (9th Cir.1977). However, because we hold the error harmless beyond a reasonable doubt, we need not decide whether this error is or is not of a constitutional nature or the precise level of harmless error scrutiny that applies.

(1966), not a defendant's own subjective perception of what constitutes a proper trial strategy. The defendant made a tactical decision to testify in light of all the circumstances of the case. As part of this strategy, on direct examination, defendant chose to testify as to his parole status and his prior offenses. The district court did not err in giving the government permission to call the parole officer.

## VI. Lineup Identification Testimony

### A. Failure to Produce Lineup Photograph

██ Perkins contends that the district court erred in allowing Chris Alamond to testify about his lineup identification of the defendant. As a result of defective film, the government could not produce an actual photograph of the lineup. However, as a substitute, the government provided the defense with individual photographs of the participants. Because Alamond's identification rested to an extent on the height and build of the participants, Perkins argues that the absence of a photographic record of the lineup deprived him of the right to confront and cross-examine a key witness. Whether Perkins's right of confrontation was violated is reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Perkins's principal complaint is that he could not adequately cross-examine Alamond because "the mug shot photos used to replace the lineup photo were not capable of a height or body build comparison." The Supreme Court has stated, however, that "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)) (emphasis in original). In this case, Perkins had an opportunity for effective cross-examination. The individual photographs list the participant's height and weight, as well as the date the photographs were taken. With information about the participants' height, weight, and general appearance, Perkins could effectively question the witness. Moreover, the jury could fully evaluate Alamond's credibility along with his explanation of why he selected the defendant. The jury could also take note of the fact that the prosecution failed to have Alamond identify the defendant in court, as the defense pointed out in its closing argument. Therefore, Perkins had the opportunity to confront Alamond at trial and had ample information at his disposal to cross-examine him effectively about the lineup identification. The district court did not abuse its discretion in allowing Alamond to testify and the failure to produce the lineup photo did not violate Perkins's right of confrontation.

### B. Cross–Examination of Photospread Officer

██ During the cross-examination of the officer who conducted the photospread identification, the defense inquired into the potential suggestiveness of photo identifications. Defense counsel then attempted to inquire into the concept of "photo induced identification," but the court sustained the government's objection to the questioning. Perkins cites this ruling as error. The district court's decision as to the scope of cross-examination is reviewed for an abuse of discretion. *United States v. Bonanno*, 852 F.2d 434, 439 (9th Cir. 1988), *cert. denied*, 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 801 (1989).

The district court did not abuse its discretion in restricting the cross-examination of this witness. First, the questions extended beyond the witness's area of expertise, which was in the presentation of photospreads. Second, the district court, before trial, properly refused to allow expert testimony on the topic of induced identification. *See United States v. Christophe*, 833 F.2d 1296, 1299–1300 (9th Cir.1987) ("Skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unrelia-

ble."). Perkins cannot evade this ruling by attempting to elicit expert testimony from a non-expert. Perkins had ample opportunity to, and did, cross-examine Alamond on his eyewitness identification, as well as argue to the jury his theory of induced identification.

### VII. Prior Robbery Conviction

 Perkins finally contends that the district court erred in denying his motion to preclude introduction under Fed.R.Evid. 609 of his prior bank robbery conviction. Perkins claims that because the prior conviction is for the same crime as the charged offense, there is a strong likelihood that the jury would consider the evidence as character evidence. The district court's decision to admit this evidence is reviewed for an abuse of discretion. *United States v. Browne*, 829 F.2d 760, 762 (9th Cir.1987), *cert. denied*, 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988).

Rule 609(a)(1) allows the introduction of prior felony convictions to impeach the credibility of a witness if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant. In *Browne*, where we considered a claim similar to Perkins's, we reiterated five factors which should be considered in performing this balancing: (1) the impeachment value of the prior crime; (2) the point in time of the conviction; (3) the similarity between the past crime and the charged offense; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. *Browne*, 829 F.2d at 762–63. There, as here, all of the factors except the similarity of the prior to the charged offense counseled in favor of admissibility. We therefore specifically noted that if "a bank robbery conviction serves a proper impeachment purpose, it, like evidence of other crimes, may be admissible in spite of its similarity to the offense at issue." *Id.* at 763. Accordingly, the admission under Rule 609 of a bank robbery conviction in a bank robbery trial is not an abuse of discre-

tion when the conviction serves a proper impeachment purpose, such as when the defendant's testimony and credibility are central to the case. *See id.* at 762–63; *United States v. Oaxaca*, 569 F.2d 518, 527 (9th Cir.), *cert. denied*, 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978).

In this case, defendant's credibility and testimony were central to the case, as Perkins took the stand and testified that he did not commit the robbery. We therefore conclude that the district court did not abuse its discretion in denying Perkins's motion to preclude the government from asking him about his recent prior conviction for bank robbery, which Perkins admitted on direct examination, and painting a complete picture of Perkins's trustworthiness as a witness.

### VIII. Conclusion

We conclude that the district court did not err in any of its evidentiary rulings. While the instruction on false exculpatory statements was proper, the record does not support the instruction on change of appearance. However, this error was harmless, as it could not have affected the verdict. We therefore affirm Perkins's conviction.

AFFIRMED.

O'SCANNLAIN, Circuit Judge, dissenting:

Ernest Perkins has raised eight independent challenges to his bank robbery conviction. The court rejects all eight and affirms the conviction. I concur in the court's analysis in all respects but one; I am not persuaded that the district court's change-of-appearance instruction, which everyone but the government concedes was improper,[1] constituted harmless error beyond a reasonable doubt. I therefore must dissent.

### I

The court has properly identified the problem: "A change of appearance instruc-

---

**1.** "We review a district court's decision to submit [a change-of-appearance] instruction[ ] for abuse of discretion." *United States v. Feldman,*

788 F.2d 544, 555 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

tion contemplates some independent evidence indicating that the *defendant himself* actually changed his appearance." *Ante* at 1403 (emphasis in original). Here, there is no such independent evidence. The bank surveillance photographs demonstrate that the robber, during the commission of the crime, had a long, thick moustache. A distinct photograph of the defendant demonstrates that he, at the time of his booking, had only a slight amount of growth over his lip. By themselves, these two sets of images offer no meaningful inference; there is nothing to tie them together. The missing link that would have justified a change-of-appearance instruction would be a photograph of Perkins *before* the robbery (or at least, before the trial) demonstrating that formerly he too, like the robber, had a long, thick moustache. Only then would there be a demonstrable change in the defendant's appearance from which one might fairly infer a consciousness of guilt and thus ultimately conclude that Perkins and the robber are the same man. As it was, the government had only two of the three snapshots it needed to warrant the challenged instruction: the all-important "before" picture either does not exist or is inexplicably absent from the record.

**2.** We recognize at least three levels of harmless-error scrutiny in the criminal context. *See generally United States v. Valle–Valdez,* 554 F.2d 911, 914–17 (9th Cir.1977). First, when the error is not of a constitutional dimension, we will deem it harmless if it is "more probable than not" that the verdict would have been the same without the error. *See United States v. Echavarria–Olarte,* 904 F.2d 1391, 1398 (9th Cir.1990).

Second, when the error *is* constitutional in nature, we will apply the *Chapman* rule and deem it harmless if, but only if, it is clear that the error was harmless beyond a reasonable doubt. *See, e.g., Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *see also id.* at 576–77, 106 S.Ct. at 3105 (describing numerous Supreme Court cases that have applied the *Chapman* rule).

Finally, when the error is constitutional in nature *and* it implicates a "structural" right so basic to a fair trial that, by definition, it can never be harmless, we will deem the error harmful per se. *See Chapman,* 386 U.S. at 23 & n. 8, 87 S.Ct. at 823 & n. 8; *Rose,* 478 U.S. at 577–80, 106 S.Ct. at 3105–07 (describing numer-

## II

Under the rule articulated by the Supreme Court in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), an error striking at the fundamental fairness of a criminal trial may be deemed harmless only if "the court [is] able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828.[2] The beneficiary of the constitutional error bears the burden of proving that "the error complained of did not contribute to the verdict obtained." *Id.* Unlike the court, I am not convinced that the trial court's erroneous instruction was harmless beyond a reasonable doubt, and I am not persuaded that the government has met its burden of proving otherwise.

The court bases its conclusion on two observations. First, the court contends that "[i]n order for the jury to have attached significance to any change of appearance, the jury already would have [to have] concluded that the defendant was the robber." *Ante* at 1403. According to this reasoning, the instruction was harmless because a logical jury would have had no rational basis for connecting the bank photographs with the booking photograph in

ous Supreme Court cases that have applied this rule); *id.* at 586–89, 106 S.Ct. at 3110–12 (Stevens, J., concurring) (suggesting that some errors are harmful per se because they implicate principles beyond the immediate case and affect values other than the accuracy and reliability of the verdict).

As Chief Judge Wallace pointed out for this court in *Valle–Valdez,* it is not always clear what level of scrutiny should apply to an erroneous jury instruction. *See Valle–Valdez,* 554 F.2d at 916–17 (citing Ninth Circuit cases that have applied both the first and second tests). The majority has elected to apply the *Chapman* rule, the intermediate level of scrutiny, to the change-of-appearance instruction at issue here. I agree that *Chapman* represents the appropriate standard because the error in the present instruction has a prejudicial quality that implicates due process concerns. *See infra; see also Rose,* 478 U.S. at 572, 576–84, 106 S.Ct. at 3103, 3105–09 (applying *Chapman* rule to an improper jury instruction); *Feldman,* 788 F.2d at 555–56 (applying *Chapman* rule to an improper change-of-appearance instruction). I therefore agree with the majority's choice of standard; I disagree with its conclusions under that standard.

order to infer a change of appearance. Either the jury already had concluded that both images depicted the same man, or absent the "missing link," they simply disregarded the instruction as nonsensical.

This reasoning, however, merely assumes away the problem. Presumably, a change-of-appearance instruction was only necessary because it was *not* abundantly clear that both sets of pictures depicted the same man. The purpose of a change-of-appearance instruction is, after all, to guide the jury's consideration of circumstantial evidence that may help to identify the defendant as the criminal; if direct evidence already sufficiently identifies the criminal, then the prosecution has no need for such an instruction. Indeed, in this case the government did not attempt (and apparently was unable) to make an in-court identification.[3]

Moreover, the fact that the instruction makes no sense without a picture of what Perkins looked like before the robbery does not suggest that the jury ignored it or placed no value upon it. It is precisely when reason does not support the giving of a jury instruction that consideration of that instruction may prove prejudicial. A logical jury might well have assumed that the trial court would not have given it illogical directions, thus concluding that *the court* at least was satisfied that the missing link had been supplied. In this way, Perkins may have been prejudiced—literally "prejudged"—by the trial court.

Second, the court concludes that the evidence of Perkins's guilt was overwhelming. Ordinarily, when there is overwhelming evidence of guilt, there can be no reasonable doubt that the error was harmless. *See, e.g., Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Rose*, 478 U.S. at 584, 106 S.Ct. at 3109 (Burger, C.J., concurring); *Echavarria–Olarte*, 904 F.2d at 1398–99. "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436 (citations omitted).

I cannot agree, however, that the government's evidence in this case is overwhelming. In support of its conclusion to the contrary, the court recites the following:

> Alamond [an eye-witness] identified Perkins as the man he saw running from the bank and getting in a blue Datsun; the police found in the bank a parking citation issued to the blue Datsun which was registered to Perkins, and found a delinquent notice for the ticket in Perkins's apartment; Perkins lied about his ownership of the car when he actually drove the blue Datsun to the place where he was arrested and had the keys to that car in his pocket, showing his consciousness of guilt; and the police found in Perkins's apartment a rust-colored 1970's style suit and maroon briefcase matching those used in the robbery.

*Ante* at 1404. The defense has raised powerful challenges to all of this evidence.

First of all, in his initial police interview, Chris Alamond described the Datsun he saw as brown, not blue—a discrepancy that casts considerable doubt upon the accuracy of his observation. He also described the fugitive whom he saw as having no facial hair—a fact that casts further doubt upon his identification or, perhaps, suggests that the man whom he saw was not the robber. Alamond, moreover, did not identify Perkins as the robber *in open court*. In fact, he admitted at trial that his observation was insufficient to permit such an identification. Alamond did positively identify Perkins sometime before trial in a live police lineup, but even that identification is questionable. At the time, Alamond conceded that he was "not sure" about his identification because the man he observed had been both on the run and across the street. Furthermore, two days prior to the

---

**3.** Linda Purmont, the bank teller whom the robber directly confronted, initially told the police that she was confident in her ability to identify the robber if presented the opportunity. At a live police lineup seven days after the crime, however, she positively identified a random participant who was standing immediately beside the defendant as the robber. At the time, she said that she recognized this man as the robber "the moment that he came in" and that she "knew it was him."

lineup, Alamond had examined a police photospread and had described a picture of Perkins as being "similar" to the man he had seen; Perkins, however, was the only person common to both the photospread and the subsequent lineup.

Nearly all the remaining evidence cited by the court relates to the getaway car and its connection to Perkins.[4] The defense, however, has offered an explanation for this connection that, if not convincing, is at least sufficient to render this evidence less than "overwhelming" in its implication of guilt. *See Dudley v. Duckworth*, 854 F.2d 967, 972 (7th Cir.1988) (error not harmless where evidence of guilt was "impressive but not overwhelming"), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). Perkins contends that he sold the car to a fellow boarder at his rooming house, Harold McGee. He admits that he continued to have "periodic access" to the car because McGee had not finished paying for it, but he insists that McGee also used the vehicle and that McGee was the driver on the day of the robbery. Perkins further insists that McGee, whom Perkins had known from his days at a halfway house, looks deceptively similar to Perkins and more closely fits the witnesses' descriptions of the robber. Like Perkins, McGee allegedly has a medium complexion, slim build, and short-cropped hair. Moreover, McGee is 5' 10", the same height as the robber in the estimation of Linda Purmont, the bank teller who had the closest view. Perkins, on the other hand, is 5' 5½", an inch shorter than Purmont herself.

If McGee did commit the crime, he may well have dropped the parking citation on the bank floor in an effort to implicate Perkins and divert attention from himself. Indeed, if he were a calculating felon, he could have purchased Perkins's car with this whole scheme in mind, never intending to change the vehicle's registration or to assert exclusive ownership. He may also have planted the clothes worn during the robbery in Perkins's closet. As the defense points out, McGee was a resident of the same rooming house and had access to Perkins's room. One might also reasonably wonder whether Perkins, if he was the actual robber, would have been careless enough to have dropped the parking citation on the bank floor and to have kept the incriminating clothes in his closet.

The purpose of these speculations is, of course, not to cast any suspicion upon Mr. McGee, whom we may presume to be a model citizen. Nor do I mean to usurp the function of the jury, who alone must weigh competing views of the evidence. Rather, I mean only to suggest that no single view of the evidence here is overwhelming. A reasonable doubt persists over whether the prejudicial inference in an admittedly improper jury instruction may have tipped the delicate balance of considerations. I simply cannot conclude without a doubt that the erroneous change-of-appearance instruction did not contribute to the verdict.

I would therefore vacate the conviction and remand this case for a new trial.

---

**4.** The court also mentions Perkins's false exculpatory statement as part of the overwhelming evidence of his guilt. As the court concedes and as its earlier discussion of this issue explains, however, such statements may not properly be regarded as direct evidence of guilt. They are at best circumstantial evidence of a consciousness of guilt. *See ante* at 1402.