959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Appellee,
v.
Gregory BURRIS, Defendant-Appellant.
 No. 91-50368.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 6, 1992*
Decided April 13, 1992.
 
 Before PREGERSON, D.W. NELSON and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Appellant Gregory Burris was convicted in district court of conspiracy and the possession and manufacture of counterfeit plates and obligations. He appeals his conviction on the ground that the district court abused its discretion by not conducting a proper balancing analysis and thus permitting the prosecution to impeach Burris on cross-examination with evidence of his prior convictions and acts of dishonesty. He also charges that the district judge erred by failing adequately to articulate his reasons for permitting the introduction of the evidence and that the evidence was inadmissible in any event. We affirm the the district court because the challenged evidence was properly admitted. Even if any error had been committed, it was harmless in light of the overwhelming evidence against Burris.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 After viewing the crime film "To Live and Die in LA," Gregory Burris, his wife Emelda Flores, and three co-conspirators decided to utilize the techniques displayed in the movie to set up a counterfeiting operation. Because of a tip, the Secret Service had the group's operations under surveillance from the moment the defendant entered a store to purchase printing equipment. After observing the group for ten days, the Secret Service arrested the defendant and his co-conspirators and indicted them on four counts of conspiracy and the possession and manufacture of counterfeit plates and obligations. Three members of the group pled guilty, and only Burris and his wife proceeded to trial.
 
 
 4
 The three co-conspirators and the Secret Service agents who had kept Burris under surveillance testified against him at trial. The government introduced evidence that Burris had agreed to bankroll the counterfeiting operation and had purchased the printing supplies using an alias. One of Burris' co-conspirators testified that Burris repeatedly discussed the counterfeiting plans with the group and offered to be responsible both for aging the money to make it more realistic and taking the money to Mexico to launder it. She also claimed that Burris participated directly in the manufacture of the money by helping to operate the printing press.
 
 
 5
 The Secret Service agents testified that they observed Burris repeatedly enter the garage where the manufacture of the Federal Reserve notes was taking place. They also saw him handle developing trays, carry reams of paper from the garage to a nearby apartment, burn some of the counterfeit currency, and inspect a photographic negative of a note outside the garage. In addition, the government introduced evidence that Burris had visited a Porsche dealership and put a deposit down on a new car after stating that he would be coming into a large amount of money very soon. A statement that Burris' wife had made after her arrest, in which she admitted that Burris knew that his loan would be used to bankroll a counterfeiting operation, was also introduced against Burris at trial. Finally, a Secret Service agent testified that Burris had given false names both when purchasing the printing supplies and during his arrest[1].
 
 
 6
 Burris testified in his own defense and denied virtually all the testimony introduced by the government. He claimed that he believed he was bankrolling a legitimate printing operation and did not become aware that counterfeiting was involved until after the printing had been taking place for several days. He denied committing the acts observed by the Secret Service agents and assisting in the printing in any manner. He also denied using a false name.
 
 
 7
 Because Burris had thus pitted his credibility directly against that of virtually all the government's witnesses, the government sought to impeach Burris on cross-examination. The prosecution gave notice of its intent to introduce information regarding Burris' past convictions and acts of dishonesty and both parties filed memoranda with the court on the issue. The district judge heard argument on the introduction of the evidence and ultimately permitted the introduction of: 1) a 1990 misdemeanor conviction for obstruction of justice based on the use of a false name[2]; 2) a 1988 conviction for the felony crime of theft by receiving; 3) several instances of giving false names to the police; 4) an incident involving the fraudulent return of merchandise; and 5) incidents of credit card fraud and insurance fraud (for which Burris was apparently never charged or convicted). Burris was eventually convicted on all four counts and sentenced to sixty-three months in prison followed by three years of supervised release. This appeal followed.
 
 STANDARD OF REVIEW
 
 8
 A district judge's decision to admit evidence for the purposes of impeachment on cross-examination is reviewed for abuse of discretion. United States v. Perkins, 937 F.2d 1397, 1406 (9th Cir.1991); United States v. Browne, 829 F.2d 760, 762 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988). An evidentiary ruling will be reversed for an abuse of discretion only if such nonconstitutional error more likely than not affected the verdict. United States v. Emmert, 829 F.2d 805, 808 (9th Cir.1987).
 
 DISCUSSION
 
 9
 a) Weighing of Probative Value of the Impeachment Evidence Against its Prejudicial Effect
 
 
 10
 Burris' first contention is that the district court erred by admitting the impeachment evidence because it failed to balance the probative value of the evidence against its prejudicial effect as required by the Federal Rules of Evidence. FRE 609(a)(1) provides that a witness may be impeached on cross-examination by evidence that he has been convicted of a crime if the crime was punishable by imprisonment of more than one year and if the court determines that the probative value of the evidence outweighs its prejudicial effect. FRE 608(b) states that the district court may permit a witness to be cross-examined about specific instances of misconduct not leading to conviction if the misconduct is probative of the witness' character for truthfulness or untruthfulness. FRE 403 modifies this rule by providing that otherwise admissible and relevant evidence may be excluded if the the court determines that its probative value is substantially outweighed by the danger of unfair prejudice.
 
 
 11
 Burris bases this argument on a series of exchanges with the trial judge, in which the judge repeatedly stated that if the defendant testified as anticipated then he would permit the government to introduce most of its impeachment items. The judge did prevent Burris' counsel from making many of his arguments orally to the court. However, there is sufficient evidence in the record that the judge adequately considered the factors weighing for and against the admission of the evidence. Moreover, as discussed in greater detail below, the evidence that was eventually admitted was in fact admissible.
 
 
 12
 This court has generally required only minimal evidence that a trial court undertook the balancing analysis required by FREs 403 and 609. In United States v. Portillo, 633 F.2d 1313, 1322-23 (9th Cir.1980), cert. denied, 450 U.S. 1043 (1981), for example, the court upheld the introduction of impeachment evidence when the district judge simply stated that he had balanced the interests and refused to admit evidence of some of the defendant's convictions. In United States v. Field, 625 F.2d 862, 872 n. 6 (9th Cir.1980), the court found that a district judge's decision to exclude one of the defendant's convictions "amply indicates that he was engaged in the process of balancing."
 
 
 13
 In this case, the district judge made clear that he had read the parties' memoranda and that he had considered the issues carefully. He also noted that whether some of the evidence would be admitted hinged on what Burris actually said on direct examination, thus indicating that he recognized that the probative value of any particular piece of information could vary. The court also noted that it would refuse to admit the fact that a firearm was involved in one of the incidents. Although it might have been preferable for the judge to conduct a more explicit balancing analysis, the evidence in the record is sufficient to support our conclusion that he did not abuse his discretion.
 
 
 14
 b) Articulation of the Reasons for Admitting the Evidence
 
 
 15
 Burris also contends that the district judge failed to make a sufficient articulation on the record of the reasons behind his decision to permit the introduction of the evidence. In support of this contention, Burris cites two Third Circuit cases that allegedly held that a district judge must articulate his balancing test on the record. United States v. Lebovitz, 669 F.2d 894, 901 (3rd Cir.), cert. denied, 456 U.S. 929 (1982); United States v. Long, 574 F.2d 761, 766-68 (3rd Cir.), cert. denied, 439 U.S. 985 (1978). These two cases, however, simply stated that it is preferable if the district court explain its reasoning on the record because it makes it easier for an appellate court to determine if the lower court abused its discretion. See also Miller v. Poretsky, 595 F.2d 780, 794 n. 40 (D.C.Cir.1978) (same). The cases did not hold that failure to articulate constituted reversible error; rather, the Lebovitz court explicitly noted that if the district court failed to undertake the articulated balancing it would either simply find the balancing implicit or undertake a review the record itself.
 
 
 16
 Furthermore, we have held in other cases involving the FRE 403 balancing analysis that "[w]e do not require a mechanical recitation of Rule 403's formula on the record as a prerequisite to admitting evidence." United States v. Ruster, 712 F.2d 409, 412 (9th Cir.1983) (citations omitted). Neither "do we require ... where there are numerous similar previous incidents, that the trial judge separately balance on the record the probative value against the prejudice that might arise from the mention of each individual incident." Id.; see also United States v. Bradshaw, 690 F.2d 704, 709 (9th Cir.1982) (upholding the district court's admission of evidence despite its failure to articulate clearly the Rule 403 balancing), cert. denied, 463 U.S. 1210 (1983). We find this contention without merit.
 
 
 17
 c) Admission of the Evidence
 
 
 18
 Burris also contends that even if the district judge adequately weighed and articulated the relevant factors in deciding to admit the impeachment evidence, his decision to permit the cross-examination on these incidents was an abuse of discretion. As to the 1988 conviction for the felony crime of theft by receiving, this circuit has articulated a five factor test for deciding whether the probative value of evidence of a felony conviction outweighs its prejudicial effect. The district court should consider "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility." United States v. Browne, 829 F.2d at 762-63.
 
 
 19
 In this case, factors 2, 3, 4, and 5 weigh in favor of admitting the fact of the conviction into evidence. The crime had occurred quite recently. The two crimes were not similar and thus would not lead the jury to believe that Burris had committed the crime once and thus was likely to have committed it again. See United States v. Bagley, 772 F.2d 482, 488 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986). Burris' testimony was obviously important and he had placed his credibility directly at issue by denying the allegations of the government's witnesses. Although the impeachment value of the crime of theft by receiving may not be very great, the importance of Burris' testimony and the centrality of the credibility issue justify the admission of the conviction. See Browne, 829 F.2d at 763 (relying on these two factors as justifying the admission of evidence about a prior conviction).
 
 
 20
 The other impeachment evidence admitted into evidence all falls under the auspices of FRE 608(b). Thus, this evidence was properly admitted if it was probative of truthfulness or untruthfulness and its probative value was not outweighed by its prejudicial effect. United States v. Reid, 634 F.2d 469, 473 (9th Cir.1980), cert. denied, 454 U.S. 829 (1981). We have held that both participation in fraudulent transactions and the use of false statements are considered probative of untruthfulness. See United States v. Jackson, 882 F.2d 1444, 1446 (9th Cir.1989) (fraudulent transactions); United States v. Jones, 900 F.2d 512, 520-21 (9th Cir.) (false statements), cert. denied, 111 S.Ct. 131 (1990); United States v. Lew, 875 F.2d 219, 222 (9th Cir.1989) (false statements). The fact that all the incidents occurred within the prior five years also increases their probative value. Jackson, 882 F.2d at 1448 (noting that "remoteness remains a relevant factor ... in assessing the probative value of the evidence"). Moreover, the impeachment evidence is not unduly prejudicial, because it did not relate directly to counterfeiting but only to truthfulness. We conclude that the impeachment evidence was properly admitted.[3]
 
 CONCLUSION
 
 21
 The conviction of Gregory Burris is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In an unfortunate decision, the name Burris used was the name of one of the characters in the film
 
 
 [2]
 Burris apparently concedes that this item was properly admitted under Federal Rule of Evidence (FRE) 609(a)(2)
 
 
 [3]
 We also note that even if the district judge had erred in admitting the evidence, any error was harmless. Although the fact that the government's key witness was one of Burris' co-conspirators might make her testimony suspect, her testimony was corroborated on numerous points by the Secret Service agents and some civilian witnesses such as the Porsche dealer. The testimony of the Secret Service agents also provided independent evidence of Burris' guilt. Furthermore, despite Burris' denial of much of the government's evidence, he did not rebut several other pieces of evidence. For example, the government offered evidence that Burris continued to purchase printing supplies for the conspiracy even after he allegedly learned of the counterfeiting plans for the first time and insisted that he did not want to be involved. The evidence against Burris was indeed overwhelming, and any error in the admission of the impeachment evidence was harmless