978 F.2d 717
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Anthony SOTO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emanuel GARCIA, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward H. SUBIA, Defendant-Appellant.
 Nos. 91-10525, 91-10526 and 91-10625.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 5, 1992.*
Decided Oct. 30, 1992.
 
 Before O'SCANNLAIN and RYMER, Circuit Judges, and VAN SICKLE,** District Judge
 MEMORANDUM***
 John Anthony Soto, Emanuel Garcia, Jr., and Edward H. Subia appeal their convictions for armed robbery of a credit union under 18 U.S.C. § 2113(a), (d). All three allege the jury was improperly instructed on flight. Soto and Subia deny they obstructed the administration of justice. Garcia and Subia argue the district court ignored their objections to statements contained in the presentence reports. We affirm.
 I. FACTS
 Minutes before noon on March 19, 1991, two masked men brandishing handguns entered the Golden One Credit Union in Fresno. Witnesses noticed that one robber was wearing a black Los Angeles Raiders jacket. He remained near the lobby, waving his gun. Customers and employees alike were ordered to lie on the floor; two were kicked.
 The other robber wore dark clothes, including a black, hooded sweatshirt. He jumped over a counter, demanding money from two tellers. After taking $3165.00, he rejoined his companion and the two men fled. Unbeknownst to them, the stolen currency included "bait" money. That is, bills which had been photocopied, and whose serial numbers were recorded.
 Outside the credit union, a Mr. Paul Romero had just parked his car. He saw two men run by, at least one of whom had a red bandanna across his face. Believing the men had robbed the credit union, he gave chase.
 The two men ran through a parking lot and into an apartment complex where Romero lost sight of them for a few seconds. They reappeared briefly as they ran around the corner of a building, only to disappear again. As Romero continued to look for them, he heard the sound of a car door (or trunk) being slammed shut. He turned a corner and saw an off-white Chevrolet Impala. Before the driver could pull away, Romero got close enough to see the license number.
 Within minutes, a law enforcement officer found the off-white Impala parked at another nearby apartment complex. Other officers converged, and the building was soon surrounded.
 Ophelia Salcedo lived in apartment 102 of the complex. That morning she had seen Garcia, Soto, and Subia outside her apartment. (She knew Garcia as a friend, and had dated Soto.) The three men were working on Soto's car.
 Ms. Salcedo took a twenty-minute shower shortly before noon. When she got out, all three were in her bedroom. They appeared to be frightened. Soto asked her if she knew how to drive. He gave her the keys to his car, and told her to leave with Garcia--acting as though Garcia was her boyfriend. When they did, Garcia was arrested.
 Law enforcement officers then ordered Subia and Soto to come out of the apartment. After about twenty minutes, the two men complied. Like Garcia, they were promptly arrested.
 The officers obtained consent to search apartment 102. Behind an air conditioning vent, they discovered four bundles of money, a handgun, and gloves. Each of the bundles had at least one "bait" bill. The officers also searched a bedroom. There, they found a Raiders jacket, dark sweatshirt, and red bandanna.
 Augustine Reyes also lived in apartment 102. According to her, the Impala which Romero saw pulling away belonged to Subia.
 On March 21, 1991, Garcia, Soto and Subia appeared in court with counsel. A detention hearing was scheduled for 9:30 a.m. the following morning. At some point prior to the hearing, the jail staff released both Soto and Subia by mistake. When neither appeared for the hearing, warrants were issued.
 Over the next six days, law enforcement officers contacted Subia's friends and relatives seeking to locate him. By the twenty-eighth of March, both men had been arrested.
 Garcia, Soto, and Subia were subsequently indicted for armed robbery of a credit union. 18 U.S.C. § 2113(a), (d). All three were convicted. Garcia was sentenced to 125 months in custody; Soto to 135; Subia to 108. These appeals follow.
 II. INSTRUCTION ON FLIGHT
 The district court instructed the jury that it could consider a defendant's flight from the scene of the crime in deciding guilt or innocence.[1] By challenging that instruction, the defendants have placed in issue the adequacy of the district court's instructions to the jury. See United States v. Perkins, 937 F.2d 1397, 1401 (9th Cir.1991). The question is whether the instructions, taken as whole, were " 'misleading or represented a statement inadequate to guide the jury's deliberations.' " United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1454 (9th Cir.1986) (citation omitted), cert. denied, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). In that regard, the district court's decision to give the challenged instruction is reviewed for an abuse of discretion. United States v. Feldman, 788 F.2d 544, 555 (9th Cir.1986), cert. denied, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).
 A. Factual Predicate for Instruction
 A defendant's flight from the scene of a crime may reflect the consciousness of guilt. United States v. Silverman, 861 F.2d 571, 581 (9th Cir.1988). Even so, a flight instruction is proper only if it is supported by an unbroken chain of inferences stretching from the defendant's flight to guilt of the crime charged. Id.
 To forge the first link in the chain, the government must demonstrate that the defendant engaged in behavior which can be construed as flight. See United States v. Myers, 550 F.2d 1036, 1049 (5th Cir.1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978). Where the identity of the perpetrator of the crime is in dispute, the government must produce some independent evidence that it is the defendant who fled. See Perkins, 937 F.2d at 1403 (construing modified flight instruction).[2] Absent such evidence, the jury can conclude the defendant fled only by first deciding he committed the crime. In that case, "Any inference of consciousness of guilt is ... unnecessary because the jury has already concluded the defendant is the perpetrator." Perkins, 937 F.2d at 1403.
 Here, the district court's decision to give an instruction on flight is understandable given undisputed evidence that the perpetrators of the robbery fled on foot. However, no one was able to identify any of the persons seen fleeing. As a result, the flight instruction was improper.
 B. Harmless Error
 The case against the defendants was very strong. They were linked to the getaway car, which was located outside Ophelia Salcedo's apartment within minutes of the robbery. At about the same time, Ms. Salcedo found them hiding in her bedroom, and noticed that they were frightened. When the police searched the apartment, they found money stolen from the credit union, a handgun, and clothing which matched the description of attire worn by the robbers. Based upon the record before us, we are satisfied beyond a reasonable doubt that the flight instruction did not affect the verdict. Perkins, 937 F.2d at 1403-04; Feldman, 788 F.2d at 555-56.
 III. OBSTRUCTION OF JUSTICE
 As a general rule, a district court's determination that a defendant has obstructed justice is reviewed as a factual finding under the clearly erroneous standard. United States v. Lofton, 905 F.2d 1315, 1316 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990). When the court's determination turns upon the interpretation of a guideline term, it is reviewed de novo. United States v. Mondello, 927 F.2d 1463, 1465 (9th Cir.1991).
 Garcia, Soto, and Subia were arrested within an hour of the robbery. Two days later, all three appeared in court with counsel. While they were present, a detention hearing was scheduled for the following morning. At some point prior to the hearing, Soto and Subia were mistakenly released from jail. It took law enforcement officers approximately six days to locate and re-arrest them.
 All three defendants were subsequently convicted of armed robbery. They were sentenced at a single hearing on September 30, 1991. Of the three, Subia was the first to be sentenced. In doing so, the district court found that Subia knew the authorities were looking for him after his inadvertent release, and that he deliberately avoided surrender.[3]
 Although the evidence is not overwhelming, the district court's finding " 'is plausible in light of the record viewed in its entirety.' " United States v. Helmy, 951 F.2d 988, 995 (9th Cir.1991) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)), cert. denied, --- U.S. ----, 112 S.Ct. 2287, 119 L.Ed.2d 211 (1992). Thus, it is not clearly erroneous. Id.
 Having found that Subia willfully refused to surrender after his mistaken release, the district court proceeded to increase his offense level by two levels for obstructing justice. The court relied upon U.S.S.G. § 3C1.1, which states:
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 1
 United States Sentencing Guidelines § 3C1.1 (Nov.1990).
 
 
 2
 The commentary to § 3C1.1 sets forth a non-exhaustive list of examples of conduct to which that section applies. Significantly, Application Note 3(e) provides that a willful failure "to appear, as ordered, for a judicial proceeding" is obstruction.
 
 
 3
 Soto and Subia were present when the detention hearing was scheduled. The fact that they were released inadvertently did not relieve them of the obligation to appear. Thus, their refusal to do so was properly characterized as the obstruction of justice.
 
 
 4
 Subia argues, however, that his conduct should be likened to flight from arrest, i.e., behavior which does not precipitate enhancement. U.S.S.G. § 3C1.1, Application Note 4(d). See United States v. Christoffel, 952 F.2d 1086, 1089 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992); United States v. Madera-Gallegos, 945 F.2d 264, 267-68 (9th Cir.1991).
 
 
 5
 Flight is characterized by an impulsive attempt to avoid apprehension in the immediate aftermath of a crime. See, e.g., Christoffel, 952 F.2d at 1089 (defendant led law enforcement officers on a dangerous, high-speed chase when they attempted to pull him over for speeding); Madera-Gallegos, 945 F.2d at 268 (after leaving their home with the lights on and food cooking on the stove, the defendants delayed their arrest by hiding in Mexico for nine months).
 
 
 6
 Obstruction, on the other hand, is distinguished by its willfulness. United States v. Mondello, 927 F.2d 1463, 1466 (9th Cir.1991) (citations omitted). That is, the defendant acts " 'with the purpose of obstructing justice.' " Lofton, 905 F.2d at 1317 (quoting United States v. Stroud, 893 F.2d 504, 507 (2d Cir.1990) (emphasis in original). In that regard, Mondello is instructive. There, the defendant was released from custody with the understanding that he would surrender voluntarily. Instead, he evaded the police for over two weeks. On those facts, we held that his efforts to avoid arrest constituted obstruction--not flight. Mondello, at 1466-67.
 
 
 7
 In this case, as in Mondello, the attempt to avoid apprehension did not take place in the immediate aftermath of the crime. To the contrary, the refusal to surrender occurred after Soto and Subia had been to court and knew they had an obligation to appear at further proceedings. Consequently, their conduct cannot be construed as mere flight. See Mondello, at 1466-67. The district court did not err in classifying it as obstruction, and imposing a two-level increase.
 
 IV. FINDINGS REGARDING DISPUTED MATTERS
 
 8
 Finally, Garcia and Subia contend the district court failed to make findings regarding their respective objections to the presentence report. Whether the court complied with Fed.R.Crim.P. 32(c)(3)(D) is reviewed de novo. United States v. Lujan, 936 F.2d 406, 412 (9th Cir.1991).
 
 A. Garcia
 
 9
 The presentence report states that the handgun which the police discovered in apartment 102 had been used in a prior shooting. Garcia insists the district court did not address his objection to that statement. He is mistaken. When sentencing Subia, the district court indicated that it would not consider statements made about the handgun's role in other crimes.
 
 
 10
 Although he did not raise the issue at sentencing, Garcia now argues that the presentence report states (inaccurately) that a citizen followed the getaway vehicle to an apartment complex, and that three men were seen entering apartment 102. The statement to which Garcia refers may well be incorrect. However, since he did not object prior to sentencing, he has waived the issue. Lujan, 936 F.2d at 412.
 
 B. Subia
 
 11
 In essence, Subia raised five objections during his sentencing hearing: They concerned (1) his role in the offense; (2) whether the district court could consider evidence that the handgun seized by the police had been used in a prior shooting; (3) whether a co-defendant threatened a witness; (4) whether Subia could be held accountable for the fact that two persons were kicked by the robbers; and (5) whether Subia was on parole at the time of the instant offense. Each of the objections was addressed by the district court (albeit briefly in some instances). In doing so, the court ruled that Subia was not entitled to a finding that he was the driver of the getaway car (as opposed to one of the men who entered the credit union); that whether the handgun seized by the police had been used in a prior shooting was not germane to this sentencing; that there was no evidence a co-defendant had threatened a witness; that Subia was responsible for injuries to victims; and that Subia was on parole when the robbery was committed.
 
 
 12
 Thus, with regard to both Garcia and Subia, the substantive requirements of Rule 32 were satisfied. See United States v. Fernandez-Angulo, 897 F.2d 1514, 1517 (9th Cir.1990). It does not appear, however, that written findings were appended to the presentence report. The failure to do so constitutes a technical violation. Id. Re-sentencing is not required, but the matter must be remanded so that the district court can correct the error. Lujan, 936 F.2d at 412.
 
 V. CONCLUSION
 
 13
 Each conviction is affirmed. We remand Garcia and Subia so that the district court can append the requisite findings to each one's presentence report.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 The Honorable Fred Van Sickle, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 ***
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The court gave the following instruction:
 Intentional flight or concealment of a defendant immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not of course sufficient in itself to establish guilt; but it is a fact which if proved, may be considered by the jury in light of all the other evidence in the case, in determining guilty or innocence. Whether or not evidence of flight or concealment show a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.
 
 
 [2]
 People v. Anjell, 100 Cal.App.3d 189, 199-200, 160 Cal.Rptr. 669 (1st Dist 1979), has been cited for the proposition that a flight instruction is improper when "identity is a contested issue." Recently, the California Supreme Court disapproved that broad dictum. People v. Mason, 52 Cal.3d 909, 943 n. 13, 277 Cal.Rptr. 166, 802 P.2d 950 (1991), cert. denied, --- U.S. ----, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991)
 
 
 [3]
 The district court appears to have incorporated this finding into its calculation of Soto's offense level. Consequently, the following analysis applies with equal force to Soto's objections