**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry JOHNSON, Defendant–Appellant.**

**No. 90–50559.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1991.

Decided Jan. 13, 1992.

Robert L. Swain, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Paul S. Cook, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, ALARCON and NELSON, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Larry Johnson appeals the denial of his motion to dismiss an indictment for bank robbery, 18 U.S.C. § 2113(a). Johnson claims the indictment should be dismissed because the United States violated (1) the anti-shuttling provision of the Interstate Agreement on Detainers Act (hereafter Interstate Detainers Act), 18 U.S.C. app. II, § 2, art. III(d), by moving him from state to federal custody and back on five occasions[1] before he was tried on the federal indictment; (2) the speedy trial provision of the Interstate Detainers Act, 18 U.S.C. app. II, § 2, art. III(a), by not commencing his trial within 180 days after his request for final disposition of the federal charge against him; and (3) the speedy indictment provision of the Speedy Trial Act, 18 U.S.C. § 3161(b), by failing to file the indictment within thirty days of his arrest.

Johnson also appeals his sentence. He claims the district court erred by failing to find he had accepted responsibility for his criminal conduct under United States Sentencing Commission, *Guidelines Manual* (hereafter U.S.S.G.), § 3E1.1, and by failing to state its reasons for sentencing him to 240 months, the highest end of the applicable 210–240 month sentencing range, in violation of 18 U.S.C. § 3553(c) and *United States v. Upshaw*, 918 F.2d 789 (9th Cir. 1990).

I.

In December of 1989, Johnson was serving the remainder of a 1983 state robbery sentence at a pre-release center in San Diego, California. Although the conditions of his pre-release required him to maintain employment at Marcov Industries in National City, California, he did not appear at work on December 19. That day, the Home Federal Bank in San Diego was robbed of $394. The robbery was videotaped and photographs of the robber were published in a local newspaper on December 20. Johnson's parole officer recognized his photograph and contacted the F.B.I.

On December 21, Johnson signed out of the pre-release center and failed to return. The next day, he arranged to have a Marcov employee bring his paycheck to an intersection near their work site. Marcov workers notified law enforcement agents. National City police arrested Johnson as he arrived to get his check, took him to the San Diego County Jail and booked him on state bank robbery charges.

---

1. Johnson claims six one-day transfers although the record reflects only five. The difference is irrelevant to the disposition of the case.

On December 26, 1989, the United States lodged a detainer at San Diego County Jail; Johnson immediately demanded a speedy trial and returned the appropriate form to the U.S. Marshal's office.[2] On April 5, 1990, the United States obtained a writ of *habeas corpus ad prosequendum* and on April 11, a federal grand jury indicted Johnson for bank robbery in violation of 18 U.S.C. § 2113(a).

On April 19, Johnson was taken into federal custody, transferred from the San Diego County Jail to the nearby United States Courthouse for arraignment on the indictment, and returned to the San Diego County Jail the same day.[3] Each of the other four pretrial exchanges from state to federal custody and return were also for one day or less: on April 24 to set dates for a hearing on motions and for trial; on May 21 to hear pretrial motions;[4] on June 26 for trial, which was reset for July 3; on July 3 for trial, which was reset for July 10; and on July 10 for trial.

Johnson was convicted of the federal bank robbery charge. At his sentencing hearing he sought a two-level acceptance of responsibility reduction under U.S.S.G. § 3E1.1. The court denied the reduction and sentenced him to 240 months.

## II.

We reject Johnson's contention that the five one-day pretrial transfers between the San Diego County Jail and the United States Courthouse in San Diego violated the anti-shuttling provision of the Interstate Detainers Act, 18 U.S.C. app. II, § 2, art. III(d). Under the Interstate Detainers Act, a "receiving state" may lodge a detainer against a prisoner held in a "sending state"[5] and obtain the temporary custody of the prisoner to permit resolution of pending charges against the prisoner in the receiving state. *See* 18 U.S.C. app. II, § 2, arts. II(b), (c) & IV(a). Section 2, article III(d), prohibits shuttling a prisoner between the sending and receiving states without final disposition of the receiving state's charges:

> If trial is not had on any indictment ... prior to the return of the prisoner to the original place of imprisonment, such indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.[6]

18 U.S.C. app. II, § 2, art. III(d).

### A.

■ The United States argues Johnson cannot invoke article III(d) because he was a pretrial detainee at the San Diego County Jail rather than a prisoner serving a sentence. We have held that the "purpose of the Interstate Agreement on Detainers Act is 'to minimize the adverse impact of a foreign prosecution on rehabilitative programs of the confining jurisdiction,'" *United ed States v. Reed*, 620 F.2d 709, 711 (9th

2. The government concedes the form was a valid request for final disposition and triggered the running of the speedy trial clock of the Interstate Detainers Act. *See* 18 U.S.C. app. II, § 2, art. III(a).

3. On February 22, 1990, the state of California had transferred Johnson from the San Diego County Jail to the California Institute for Men at Chino, California (Chino), to serve the remainder of his 1983 sentence. Before he was taken into temporary federal custody for the first time, California transferred him back to the San Diego County Jail to face charges stemming from his violation of the conditions of his prerelease. He remained at the San Diego County Jail during the time the custody transfers at issue occurred.

4. On March 30, 1990, Johnson had moved for dismissal of the federal charges, on the ground the government had violated the thirty day arrest-to-indictment limit imposed by the Speedy Trial Act, 18 U.S.C. § 3161(b). On May 7, he renewed that motion and also requested dismissal on the ground the government had violated the anti-shuttling provision of the Interstate Detainers Act, 18 U.S.C. app. II, § 2, art. III(d). The district court denied the motions and set a trial date of June 26, 1990.

5. The United States is a party to the Interstate Detainers Act and may be either the sending or receiving state. 18 U.S.C. app. II, § 2.

6. If the United States is the receiving state, dismissal may be with or without prejudice. 18 U.S.C. app. II, § 9(1).

Cir.1980) (citation omitted),[7] and that a pretrial detainee does not have a sufficient interest in the confining institution's rehabilitative programs to justify invocation of the Act, *id.*

At the time of the transfers, however, Johnson was not only a pretrial detainee, but also a convicted prisoner serving a state sentence. Unlike the typical pretrial detainee with whom *Reed* was concerned, a pretrial detainee who is also serving a sentence may be eligible for rehabilitative programs and therefore has sufficient interest to invoke the Act. *See United States v. Roy,* 771 F.2d 54, 57–58 (2d Cir.1985). •

## B.

■ Whether one or more one-day transfers between a sending and receiving state without resolution of the receiving state's pending charges violate the Interstate Detainers Act is a question of first impression in this circuit. Other circuits are divided. Four have held brief transfers permissible because they did not threaten the prisoner's interest or participation in rehabilitative programs and so did not frustrate the purposes of the Act. *See United States v. Taylor,* 861 F.2d 316, 319 (1st Cir.1988); *United States v. Roy,* 830 F.2d 628, 636 (7th Cir.1987); *Roy,* 771 F.2d at 60; *Sassoon v. Stynchombe,* 654 F.2d 371, 374–75 (5th Cir. Unit B Aug. 1981). Two other circuits have held whenever a prisoner is transferred, however briefly, from a sending state to a receiving state and back without disposition of the receiving state's pending charges, those charges must be dismissed. *United States v. Schrum,* 638 F.2d 214, 215 (10th Cir.1981), *aff'g* 504 F.Supp. 23 (D.Kan.1980); *United States v. Thompson,* 562 F.2d 232, 234 (3d Cir.1977)

(en banc). We agree with the majority in the absence of any evidence that the one-day transfers interfered with Johnson's participation in any rehabilitative program, or that he was denied, threatened with the denial of, or feared losing any privileges because of the pending federal charges. The transfers involved in this case appear to be wholly consistent with the goal of the Interstate Detainers Act to expedite the prosecution of federal charges without interfering with the state's rehabilitative programs.

## III.

We also reject Johnson's claim that the Interstate Detainers Act's speedy trial provision, 18 U.S.C. app. II, § 2, art. III(a), requires dismissal of the indictment because trial began more than 180 days after Johnson delivered his written request for speedy resolution of the charges against him.[8]

The government agrees Johnson made a valid request for final disposition on December 26, 1989. Trial did not begin until July 10, 1990, 196 days later. Johnson "therefore has stated the two basic elements necessary to raise an [Interstate Detainers Act] claim: he made a valid ... request that satisfied the [Act]'s formal requirements, and he was tried over 180 days after that request was received." *Johnson v. Stagner,* 781 F.2d 758, 762 (9th Cir.1986).

■ The government argues that because the 180th day from the request date was Sunday, June 24, 1990, Federal Rule of Criminal Procedure 45(a) dictates the trial could have commenced on Monday, June

---

**7.** Adverse impacts could include denial of placement in desirable jobs or training programs and reduced interest in rehabilitation because of anxiety over the outcome of outstanding charges. *United States v. Mauro,* 436 U.S. 340, 359–60, 98 S.Ct. 1834, 1846–47, 56 L.Ed.2d 329 (1978).

**8.** Article III(a) provides, in pertinent part, that the prisoner
shall be brought to trial within one hundred and eighty days after he shall have caused to

be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment ...: *Provided,* That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
18 U.S.C. app. II, § 2, art. III(a).

25.[9] We agree. States party to the Interstate Detainers Act have used local time computing provisions analogous to Fed. R.Crim.P. 45(a) to extend the 180 day limit when the 180th day is a Saturday, Sunday, or legal holiday.[10] In addition, we have applied Fed.R.Crim.P. 45(a) to Speedy Trial Act proceedings, *see, e.g., United States v. Daly,* 716 F.2d 1499, 1504 n. 3 (9th Cir. 1983), and since the Speedy Trial Act and the Interstate Detainers Act's speedy trial provision serve the same purposes, *see United States v. Odom,* 674 F.2d 228, 231 (4th Cir.1982), it is appropriate to hold that where the Speedy Trial Act allows extension of an applicable time frame under Fed. R.Crim.P. 45(a), so too does the Interstate Detainers Act.

Moreover, the fifteen day period from Monday, June 25, to Tuesday, July 10, 1990, may be tacked on to the critical time period. The district court found fifteen days of pretrial delay attributable to Johnson's pretrial motions and so excludable under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(F). Where delay is excludable under the Speedy Trial Act because it is attributable to a defendant's own motions, the running of the Interstate Detainers Act's speedy trial clock is also tolled. *See United States v. Cephas,* 937 F.2d 816, 819 (2d Cir.1991); *United States v. Walker,* 924 F.2d 1, 5 (1st Cir.1991); *United States v. Nesbitt,* 852 F.2d 1502, 1516 (7th Cir.1988).

**9.** Under Rule 45(a), if the last day of the pertinent period falls on a Saturday, Sunday or legal holiday, the period runs to the end of the next day that is not a Saturday, Sunday or holiday.

**10.** *E.g., People v. Bielecki,* 588 P.2d 377, 378 (Colo.Ct.App.1978); *State v. Butler,* 496 So.2d 916, 916 (Fla.Dist.Ct.App.1986); *Moon v. State,* 258 Ga. 748, 375 S.E.2d 442, 447 n. 2 (1988); *State v. White,* 234 Kan. 340, 673 P.2d 1106, 1111 (1983); *People v. Malone,* 177 Mich.App. 393, 442 N.W.2d 658, 660 n. 5 (1989); *State v. Alderete,* 95 N.M. 691, 625 P.2d 1208, 1209 (1980).

**11.** Johnson frames the issue as whether the district court allowed him the opportunity to demonstrate his acceptance of responsibility. He maintains that he had a fifth amendment right to refuse to discuss his involvement in the bank robbery with the probation officer preparing his Presentence Report, so the only way he could earn the acceptance of responsibility reduction

## IV.

■ Johnson contends the government violated the Speedy Trial Act's thirty day arrest-to-indictment limit, 18 U.S.C. § 3161(b). The district court ruled the clock on section 3161(b) was never triggered because Johnson was not "arrested" by the federal government until after the federal indictment was filed.

"Regardless of the degree of federal involvement in a state ... investigation and arrest, only a *federal* arrest will trigger the running of the time period set forth in 18 U.S.C. § 3161(b)." *United States v. Manuel,* 706 F.2d 908, 915 (9th Cir.1983) (original emphasis). The district court's finding that no federal arrest occurred before the indictment was filed was not clearly erroneous, *see id. at 914: Although the F.B.I. actively investigated the bank robbery, state police arrested Johnson, took him to the San Diego County Jail, and booked him on state robbery charges.*

## V.

■ Johnson claims the district court improperly failed to find he had accepted responsibility for his criminal conduct under U.S.S.G. § 3E1.1.[11]

■ Johnson's effort to demonstrate his acceptance of responsibility consisted of a one paragraph letter sent nine days before the sentencing hearing.[12] The district

was by speaking to the court during the sentencing hearing. He was not given the chance to speak before the reduction was denied. Even assuming *arguendo* Johnson had the right to augment his statements to the probation officer, the letter Johnson sent to the court prior to the sentencing hearing, which the court considered in determining whether to award the reduction, provided adequate opportunity. *See United States v. Ramos,* 923 F.2d 1346, 1360 & n. 29 (9th Cir.1991).

**12.** The letter read in full:

> TO: Honorable Harry L. Hupp
> I accept responsibility for committing the bank robbery. On 12–19–89, I went to the Home Fed. Bank and presented a demand note to the teller. I was given a total of $394.00 by the teller, which I immediately used to purchase narcotics. I know my actions were wrong and I'm sorry.

court found it perfunctory and unconvincing. In addition, the court noted Johnson had not merely remained silent when questioned by the F.B.I. after his arrest but had lied about his responsibility for the robbery. The court's conclusion that Johnson had not manifested "sincere contrition" or "sincere remorse" was not clearly erroneous. *See Ramos,* 923 F.2d at 1360.

### VI.

■ Finally, we reject Johnson's claim that when the district court sentenced him to 240 months, it failed to state its reasons for deciding on that particular point within the applicable range,[13] a claim we review *de novo. United States v. Upshaw,* 918 F.2d 789, 792 (9th Cir.1990).

18 U.S.C. § 3553(c) provides in pertinent part:

> The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
>
> (1) is [within the range applicable under the Sentencing Guidelines] and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range....

In *Upshaw,* we held 18 U.S.C. § 3553(c) requires the court to "make an adequate statement of reasons for choosing [a] sentence within the sentencing range...." 918 F.2d at 792. The statement "must include a discussion of the factors used to choose a particular sentence within the sentencing range. These factors include individual considerations of background, character, and conduct, as well as the systemic goals of deterrence, rehabilitation, and consistency in sentencing." *Id.*

The district judge noted in his written Memorandum of Sentencing Hearing and Report of Statement of Reasons that Johnson had "committed four prior robberies, each one within a short time of release on previous robberies. All this was driven by a heroin addiction the def[endan]t has not been able to master. Protection of the public requires a sentence at the statutory maximum." This statement complied with *Upshaw*'s substantive requirements.

■ Although section 3553(c) mandates the statement be in "open court," which could imply an oral statement from the bench, the legislative history indicates a written statement will serve as well:

> The statement of reasons [for imposing a sentence at a particular point within the sentencing range] can be used by each participant in the Federal criminal justice system charged with reviewing or implementing a sentence. It will assist the appellate courts in ... determining whether a sentence within the guidelines is the result of correct or incorrect application of the guidelines. The statement of reasons can be used by probation or prison officials, working in conjunction with the defendant, in achieving the goals sought by the sentencing judge.

S.Rep. No. 225, 98th Cong., 2d Sess. 60, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3243. Appellate judges who review the statement to determine whether it comports with the sentencing guidelines, and prison or probation officials who review the statement to ensure the goals of the sentencing judge are met, are as well served by a written as by an oral statement. *Cf. United States v. Rodriguez,* 882 F.2d 1059, 1066 (6th Cir.1989) (when a district court departs from the applicable guidelines range, the specific reason for departure required by section 3553(c) may be "a short clear written statement or a reasoned statement from the bench").

AFFIRMED.

---

**13.** The range under the guidelines was 210 to 262 months. However, the federal bank robbery statute, 18 U.S.C. § 2113(a), provides for a maximum sentence of 240 months.