967 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Michael CHAKIRIS, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael CHAKIRIS, Defendant-Appellant.
 Nos. 91-50355, 91-50467.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1992.
Decided June 16, 1992.
 
 Before D.W.NELSON, BOOCHEVER and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael Chakiris was convicted of two counts of bank robbery in violation of 18 U.S.C. § 2113(a). He was sentenced to 115 months in prison, plus three years of supervised release. The government appeals, arguing that the district court erred in refusing to sentence Chakiris as a career offender under the United States Sentencing Guidelines.
 
 
 3
 Chakiris cross-appeals, contending his conviction should be set aside because the government violated the Interstate Agreement on Detainers Act in bringing him to trial. He also argues that the trial court erred in: (1) excluding testimony by an eyewitness identification expert, (2) admitting evidence of his attempt to evade arrest and his failure to provide a handwriting exemplar, and (3) instructing the jury that it could consider his change in appearance as evidence of his consciousness of guilt. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b).
 
 CHAKIRIS'S CONVICTION
 A. Interstate Agreement on Detainers Act
 
 4
 Chakiris argues that his conviction should be set aside because the government failed to bring him to trial within: (1) 180 days after he filed a request for final disposition of the charges against him, and (2) 120 days after he first appeared in federal court. See 18 U.S.C. app. II, § 2, arts. III(a) and IV(c). Chakiris also contends the government violated the Act's anti-shuttling provisions by repeatedly transferring him between state and federal custody. See 18 U.S.C. app. II, § 2, art. III(d).[1]
 
 1. Speedy Trial Requirements
 
 5
 Chakiris's speedy trial clock began to run on November 8, 1990, the day he furnished the government with notice of his desire for final disposition of the charges against him.[2] He was initially brought before a federal magistrate on February 27, 1991. His trial began on October 2, 1991. Chakiris contends his conviction must be reversed because the delay between his notice and trial (316 days), and between his initial appearance in federal court and his trial (217 days), exceeded the Act's speedy trial requirements. We disagree.
 
 
 6
 Time consumed by a defendant's pretrial motions is excluded in determining the total allowable delay under the Interstate Agreement on Detainers Act if it would have been excluded under the Speedy Trial Act.[3] United States v. Johnson, 953 F.2d 1167, 1172 (9th Cir.1992) ("Where delay is excludable under the Speedy Trial Act because it is attributable to a defendant's own motions, the running of the Interstate Detainers Act's speedy trial clock is also tolled."). Under the Speedy Trial Act, a pretrial motion tolls a defendant's speedy trial clock from the time it is filed until the time it is resolved. See, e.g., United States v. Aviles-Alvarez, 868 F.2d 1108, 1111-12 (9th Cir.1989).
 
 
 7
 Chakiris filed several pretrial motions on April 9, 1991. These motions would have tolled the limitations period under the Speedy Trial Act until they were resolved on October 2, 1991. Id. Thus, the period between April 9 and October 2 is excluded in calculating the total allowable delay under the Interstate Agreement on Detainers Act. Johnson, 953 F.2d at 1172. As a result, the total nonexcludable delay between Chakiris's notice and trial was only 151 days (November 8 to April 9), and the delay between his first appearance in federal court and trial was only 41 days (February 27 to April 9). Because neither delay exceeded the Interstate Agreement on Detainers Act's speedy trial requirements, no speedy trial violation occurred.
 
 2. Anti-Shuttling Provisions
 
 8
 The Interstate Agreement on Detainers Act provides:
 
 
 9
 If trial is not had on any indictment ... prior to the return of the prisoner to the original place of imprisonment, such indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
 
 
 10
 18 U.S.C. app. II, § 2, art. III(d). Chakiris argues that the government violated this provision by repeatedly transferring him between state and federal custody for his federal motions hearings.
 
 
 11
 We recently held that "one or more one-day transfers between a sending and receiving state without resolution of the receiving state's pending charges" does not violate the Act's anti-shuttling provisions, as long as these brief transfers do not adversely affect the prisoner. Johnson, 953 F.2d at 1171. Because the transfers in this case never lasted more than a single day and had no adverse impact on Chakiris, they did not violate the Interstate Agreement on Detainers Act.
 
 B. Exclusion of Expert Testimony
 
 12
 Chakiris argues that the trial court erred in excluding testimony from an expert on the general unreliability of eyewitness identification. "We review the district court's decisions to admit or exclude expert testimony for abuse of discretion and reverse only for manifest error." United States v. Miller, 874 F.2d 1255, 1266 (9th Cir.1989).
 
 
 13
 We have repeatedly upheld the exclusion of expert testimony on the unreliability of eyewitnesses. E.g., United States v. Christophe, 833 F.2d 1296, 1299 (9th Cir.1987). As we explained in Christophe, such testimony is almost always superfluous because the "skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of the jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable." Id. at 1300.
 
 
 14
 Chakiris had a full and fair opportunity to cross examine each of the eyewitnesses at trial. Consequently, the district court's decision to exclude expert testimony concerning the general unreliability of eyewitnesses was not an abuse of discretion.
 
 C. Admission of Evidence
 
 15
 Chakiris contends the trial court erred in admitting evidence of his pre-arrest flight from the police, and his failure to submit a handwriting exemplar. We review the decision to admit evidence for an abuse of discretion. United States v. Dunn, 946 F.2d 615, 617 (9th Cir.), cert. denied, 112 S.Ct. 401 (1991).
 
 
 16
 "Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." United States v. Harris, 792 F.2d 866, 869 (9th Cir.1986). Chakiris argues that the evidence of his flight should not be admissable in this case, however, because the government did not establish he knew he was sought by the police in connection with the bank robberies.
 
 
 17
 Ordinarily, "[t]he government need not, as a condition of admissibility, lay a foundation that the defendant knew he was being sought for the crime charged." Id. Rather, such a showing is only required "where flight is the sole evidence of identity." Id. Here, as in Harris, several eyewitnesses had identified Chakiris as the bank robber. Consequently, the district court did not abuse its discretion in admitting evidence of Chakiris's attempt to avoid arrest.
 
 
 18
 We also find no error in the district court's decision to admit evidence of the government's failed attempt to obtain a handwriting exemplar from Chakiris. The government was entitled to show that it had made a timely effort to compare Chakiris's handwriting with the robbery notes left at the banks. The court allowed a police investigator to testify that he had unsuccessfully attempted to obtain a handwriting sample from Chakiris. The court specifically prohibited the government from mentioning the reason no sample was obtained. It also admonished the jury not to speculate as to why the investigator was unable to obtain the sample.
 
 
 19
 The limited scope of the admitted testimony, combined with the court's cautionary instruction, was sufficient to shield Chakiris from an unwarranted inference that he had obstructed the government's investigation by refusing to provide an exemplar.
 
 D. Jury Instructions
 
 20
 Chakiris contends the trial court erred in instructing the jury that it could consider his change of appearance prior to trial as evidence of his consciousness of guilt. "The district court's decision to give a jury instruction is reviewed for abuse of discretion." United States v. Perkins, 937 F.2d 1397, 1401 (9th Cir.1991).
 
 
 21
 A change of appearance instruction is proper only if a logical inference can be drawn between the defendant's altered appearance and his guilt. Id. at 1402. Chakiris's appearance had changed only slightly since his line up--his hair was shorter and darker, his complexion was lighter, and he had put on a little weight. Because each of these changes could simply be attributable to the normal passage of time, and not to any attempt by Chakiris to conceal his identity, the trial court's change of appearance instruction may have been unwarranted.
 
 
 22
 Given the highly probative identification evidence against Chakiris, however, it is improbable that this instruction affected the verdict in this case. Thus, we are convinced beyond a reasonable doubt that any error by the trial court in giving this instruction was harmless. See id. at 1403 ("an inappropriate 'consciousness of guilt' instruction may amount to harmless error").
 
 CHAKIRIS'S SENTENCE
 
 23
 Federal Sentencing Guideline § 4B1.1 provides an enhanced penalty for a defendant who has at least two prior felony convictions involving "crime[s] of violence." U.S.S.G. § 4B1.1. Under the guidelines, a "crime of violence" includes "burglary of a dwelling." U.S.S.G. § 4B1.2(1)(ii).
 
 
 24
 The district court concluded that Chakiris's California burglary conviction did not constitute a qualifying "crime of violence" under section 4B1.1 because California's burglary statute allowed a defendant to be convicted by entering a variety of structures other than "dwellings."[4] The government contends the court erred in refusing to consider Chakiris's information and change of plea agreement, which specify that Chakiris "did unlawfully enter [an apartment] with intent to commit theft."
 
 
 25
 We agree that the district court erred in refusing to consider Chakiris's information and change of plea agreement. See United States v. Sweeten, 933 F.2d 765, 769-70 (9th Cir.1991) ("it is error for a district court ... to restrict its consideration to the original judgment of conviction and corresponding criminal statute if also presented with documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes"); United States v. O'Neal, 937 F.2d 1369, 1373 (9th Cir.1990) (a sentencing court may review the indictment or other charging papers and the resulting judgment of conviction in determining whether a conviction constitutes a violent felony); United States v. Barney, 955 F.2d 635, 639 (10th Cir.1992) ("sentencing court may look to the underlying indictment or information and the text of the guilty plea" to determine whether a burglary conviction constitutes a crime of violence).
 
 
 26
 Count one of the information that charged Chakiris with the California burglary alleged that he "unlawfully entered" an apartment with intent to commit theft in violation of California's burglary statute. The change of plea form Chakiris signed specifically recited that he was pleading guilty to count one in exchange for the state's dismissal of counts two and three. The information, Chakiris's change of plea form, and his guilty plea established that he illegally entered an apartment to commit the California burglary. His conviction of that crime is a "crime of violence" under section 4B1.1.[5]
 
 
 27
 We AFFIRM Chakiris's conviction and REMAND to the district court for resentencing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government contends the Interstate Agreement on Detainers Act is inapplicable because Chakiris is a pretrial detainee. See United States v. Reed, 620 F.2d 709, 711 (9th Cir.1980) (the Act's protections do not extend to pretrial detainees). We do not address this issue, because we conclude that even if the Act does apply, it was not violated in this case
 
 
 [2]
 The government argues that Chakiris's speedy trial clock did not begin to run until November 20, the day it actually received Chakiris's notice. We need not decide this issue, however, because our analysis is the same regardless of which action triggered Chakiris's speedy trial clock
 
 
 [3]
 The Speedy Trial Act establishes a maximum time period for the pretrial incarceration of a defendant. 18 U.S.C. § 3161 et. seq
 
 
 [4]
 Chakiris was convicted under the 1976 version of Cal.Penal Code section 459. This section provided that "[e]very person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, ... railroad car, locked or sealed cargo container, ... any house car, ... inhabited camper, ... vehicle, ... aircraft, ... or mine, or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary."
 
 
 [5]
 It is undisputed that Chakiris's 1981 conviction for armed robbery also constitutes a "crime of violence" under section 4B1.1