32 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos DOLORES-RODRIGUEZ, Defendant-Appellant.
 No. 93-50513.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1994.
Decided Aug. 8, 1994.
 
 1
 Before: BROWNING and FLETCHER, Circuit Judges, and FITZGERALD,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Carlos Dolores-Rodriguez objects to the length of his 293-month sentence imposed after he pled guilty to a seven-count drug-trafficking and bribery indictment. He argues that the district court erred (1) by calculating his offense level on the basis of the cocaine he actually smuggled into the country rather than on the basis of the marijuana he thought he was importing; (2) by imposing a four-level enhancement based on his leadership role; and (3) by sentencing him at the high end of the guidelines range without sufficiently explaining its reasons for doing so. We affirm the sentence.
 
 BACKGROUND
 
 4
 In June 1992, U.S. Customs Inspector Mark Wilkerson was working undercover as a bribable customs inspector. In exchange for a $1,000 bribe from Dolores and codefendant Reyes, Wilkerson agreed to listen to an offer to join a drug smuggling operation. He then agreed to allow drug-laden vehicles to pass through his lane at the port of entry in Tecate, California. He was to receive $10,000 for each vehicle he let into the country.
 
 
 5
 On June 28, 1992, Dolores, Reyes, and Valdez (another codefendant) met Wilkerson at a restaurant and gave him $5,000 as part payment for an upcoming shipment of marijuana. On July 8, 1992, Dolores met Wilkerson at a grocery store and gave him a piece of paper with a description of the load vehicle: a blue 1981 Buick with California license plate number 1BCP099. Wilkerson told Dolores that he would be on duty at 10:30 a.m. that day.
 
 
 6
 At 10:33 a.m., a car matching the description given by Dolores came into Wilkerson's lane, and Wilkerson let it through. Dolores was driving. Police surveillance units followed Dolores to a K-Mart in El Cajon, California. There, he was soon met by Valdez; Valdez had just driven through Wilkerson's lane in a blue Ford Ltd. With Valdez was another codefendant, Galvez. The three men went into the K-Mart, and Dolores gave a black handbag to Valdez and Galvez, who put it into the Ford. Then all three left, leaving the blue Buick behind. The Buick was later discovered to contain 150 kilograms of cocaine.
 
 
 7
 Dolores pled guilty to all seven counts of the superseding indictment: conspiracy to possess with intent to distribute a controlled substance; possession with intent to distribute a controlled substance; conspiracy to import a controlled substance; importation of a controlled substance; conspiracy to bribe; and two counts of bribery.
 
 
 8
 In a post-arrest statement, Dolores said that he had been approached by one Gonzalez, in Mexico, who had offered him $10,000 to drive 100 kg. of marijuana across the border in the Buick, and then to leave the Buick in El Cajon. The government, by contrast, has taken the position throughout this case that far from being a mere "mule," Dolores was the leader of a large drug smuggling organization.
 
 
 9
 The district court found for the government on this issue, and imposed a four-point enhancement for Dolores's leadership role. The district court also declined to take into account Dolores's insistence that he had thought that what he was smuggling was marijuana rather than cocaine. Finally, the district court sentenced Dolores at the high end of the guidelines range, explaining that this was appropriate because Dolores was guilty of bribery.
 
 DISCUSSION
 
 10
 We review application of the Sentencing Guidelines de novo. United States v. Fagan, 996 F.2d 1009, 1017 (9th Cir.1993). We review the district court's factual findings in the sentencing phase for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992). Whether a district court sets forth adequate reasons for imposing a particular sentence within the applicable guideline range is reviewed de novo. United States v. Wilson, 7 F.3d 828, 839 (9th Cir.1993), cert. denied, 114 S.Ct. 2151 (1994).
 
 A. Cocaine v. Marijuana
 
 11
 The district court correctly sentenced Dolores on the basis of cocaine rather than marijuana quantities. The issue is controlled by United States v. Salazar, 5 F.3d 445 (9th Cir.1993). In Salazar, the defendant, a customs inspector, pled guilty to conspiring to import a controlled substance, but argued that the district court erred in computing his sentence on the basis of the 1615 kg. of cocaine that he let into the country: he had agreed with his coconspirators only that they could drive marijuana-laden vans through his lane. The defendant argued, much as Dolores argues here, that under U.S.S.G. Sec. 1B1.3, he was accountable only for the reasonably foreseeable acts of his coconspirators, and that the switch from marijuana to cocaine was not reasonably foreseeable.
 
 
 12
 The Salazar court rejected that argument with the following concise discussion:
 
 
 13
 The expansion of defendant's accountability due to the relevant conduct of coconspirators is not what the district court had before it in this sentencing. As the 1992 clarifying change to Guidelines Notes indicates, "[t]he requirement of reasonable foreseeability applies only in respect to the conduct ... of others.... It does not apply to conduct that the defendant personally undertakes...." U.S.S.G. Sec. 1B1.3, comment. (n. 2) (Nov. 1992). Salazar personally undertook to pass drug-laden vehicles through the checkpoint. He is responsible for the drugs that came through, even if he did not know what drugs they were.
 
 
 14
 5 F.3d at 446 (ellipses in original).
 
 
 15
 This case is indistinguishable from Salazar. If a customs inspector who allows what he knows to be drug-laden vehicles to pass through his lane is "personally" responsible for the consequences of that action, then a person who drives what he knows to be a drug-laden vehicle across the border likewise is personally responsible. As in Salazar, the foreseeability requirement of Sec. 1B1.3, which pertains to the actions of coconspirators or other criminal associates, is simply inapplicable. Cf. United States v. Castaneda, 9 F.3d 761, 769-71 (9th Cir.1993) (relied on by Dolores) (requiring foreseeability to establish accountability for the acts of others), cert. denied, 114 S.Ct. 1564 (1994).
 
 
 16
 Dolores argues in his reply brief that the sentence cannot be sustained because the district court made no factual findings of "conspiratorial intent." But such findings were not necessary: once again, Dolores's accountability under the Sentencing Guidelines stemmed not from the acts of his coconspirators ("relevant conduct" under U.S.S.G. Sec. 1B1.3) but rather from acts he himself undertook (the "offense of conviction").
 
 
 17
 Dolores is also incorrect when he suggests that the district court erred by failing to take into account his purported mistake of fact as to the kind of drugs involved, and his consequent lack of mens rea. Salazar held that mens rea is to be evaluated with respect to the offense as statutorily defined, rather than with respect to a particular subdivision within a sentencing guideline. 5 F.3d at 446. Thus in Salazar, it was sufficient that the defendant knew that he was importing a controlled substance, since that was the conduct made illegal by the statute. Id. It did not matter that the defendant did not know how much or what kind of drug he was importing--considerations important only at the level of particular guidelines. Id. Exactly the same pertains here. Dolores knew that he possessed with intent to distribute, and that he was smuggling, a controlled substance. This was the conduct made illegal by the statutes he violated. 21 U.S.C. Sec. 841(a)(1); 21 U.S.C. Sec. 960. The fact that he may have been mistaken as to precisely what that controlled substance was cannot help him any more than it helped the defendant in Salazar.
 
 
 18
 B. Four-Point Enhancement for Leadership Role
 
 
 19
 Under U.S.S.G. Sec. 3B1.1(a), the district court must increase the offense level by four if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Dolores does not dispute that five or more persons were involved in the crimes of which he was convicted, but he does argue that he was not a leader.
 
 
 20
 In order to determine whether a person is a leader or organizer, a court should consider
 
 
 21
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 22
 U.S.S.G. Sec. 3B1.1, comment. (n. 3) (Nov. 1, 1992).
 
 
 23
 In this case, evidence that Dolores managed other persons was supplied, most notably, by Dolores himself. In conversations with Wilkerson, the undercover agent, Dolores repeatedly emphasized that he was the leader of a major drug smuggling operation, and that he had many people working for him on both sides of the border. On one occasion, he said that he had over 20 people working for him, and that he was protected by a Mexican law enforcement agency.
 
 
 24
 These assertions by Dolores appear to have been at least partially borne out by his behavior and by the behavior of several of his codefendants. The PSR mentions that on one occasion, codefendant Galvez acted as a lookout while Dolores negotiated with Wilkerson. The government asserts that on many occasions Galvez or Valdez acted as guards, and sat or stood apart from Dolores while he spoke with Wilkerson.
 
 
 25
 Finally, the conclusion that Dolores played a leadership role is supported by his interactions with Wilkerson. It was Dolores who offered Wilkerson money in exchange for his help in the smuggling operation, and who explained to Wilkerson how the operation worked. In these interactions, Dolores appeared to take charge both of the bribery and of all of the details of getting the drugs into the country.
 
 
 26
 Dolores points out that he also did some things which were not at all typical of a leader. Most notably, he himself drove the car over the border--a risky operation more commonly assigned to mules than to kingpins. In addition, he contends that he had remarkably little control over the operation. No key to the trunk of the car, where the cocaine was stored, was ever found on him. Indeed, he did not even know what kind of drugs the trunk contained. And while he may have told Wilkerson that he was the head of a large drug smuggling outfit, and that he had employees watching over his affairs on both sides of the border, these remarks were made only to allay any anxieties Wilkerson may have had about the operation. They were mere puffing.
 
 
 27
 The district court resolved the conflict in favor of the government. Dolores points to nothing indicating that the court committed clear error in doing so. There was ample evidence to support the district court's conclusion. We note that even if there was another leader behind Dolores, this would not preclude Dolores from being a leader too: there can be more than one leader in a criminal association. U.S.S.G. Sec. 3B1.1, comment. (n. 3). And even if Dolores did not control 20 persons, but only the two who seemed to be acting as his bodyguards, this would be sufficient under Sec. 3B1.1(a): while the criminal act must involve at least five persons, the defendant need not have control over all of them. United States v. Barnes, 993 F.2d 680, 685 (9th Cir.1993), petition for cert. filed (U.S. Apr. 1, 1994) (No. 93-8563).
 
 
 28
 Dolores also argues that the district court erred because it did not make findings of fact on the issue of leadership. Under Fed.R.Crim.P. 32(c)(3)(D), when the defendant alleges any factual inaccuracy in the PSR, the district court must either make a finding as to that allegation, or determine that no such finding is necessary because the matter in dispute will not be taken into account in sentencing.
 
 
 29
 The district court complied with Rule 32(c)(3)(D). The court clearly stated that it found Dolores to be a leader.[1] Dolores is correct that the court did not explain exactly how he controlled any of the others involved in the crime. The procedural rule Dolores claims was violated, however, does not require an explanation, but only a finding. See United States v. Upshaw, 918 F.2d 789, 792 (9th Cir.1990) (court satisfies requirement that it make its resolution of all disputed matters clear on the record when it expressly adopts government's version of the facts and expressly rejects defendant's), cert. denied, 499 U.S. 930 (1991). Since a finding was made, we conclude that Rule 32(c)(3)(D) was satisfied.[2] We are aware of out-of-circuit authority which requires district courts to make factual findings with respect to the factors enumerated in the commentary to Sec. 3B1.1, but the cases relied on by Ruis are distinguishable. See United States v. Roberts, 14 F.3d 502, 522-23 (10th Cir.1993) (court relies on inappropriate factors in determining that a leadership enhancement is warranted); United States v. Odom, 13 F.3d 949, 960-61 (6th Cir.) (record shows only that defendant was a highly-placed middleman), cert. denied, 114 S.Ct. 1859 (1994) (No. 93-8610), and petition for cert. filed (U.S. Apr. 11 1994) (No. 93-9196).
 
 C. Sentence at the High End of the Range
 
 30
 Under 18 U.S.C. Sec. 3553(c), a sentencing court must state its reasons for the imposition of a particular sentence if the sentencing range exceeds 24 months. Dolores argues that the district court did not comply with this requirement, since in choosing a sentence at the very top of the 235 to 293 month range, the court stated as follows:
 
 
 31
 I couldn't agree more with [the prosecutor] when he says that for this type of bribery activity, the maximum sentence under the guidelines should be applied. There is no question about that. There is no doubt in my mind that that was an attempted bribe. And, as a result, the high line will apply, the high guideline.
 
 
 32
 RT 6/28/93 at 50.
 
 
 33
 Dolores relies, first, on United States v. Upshaw, 918 F.2d at 792. In that case, the only reason supplied by the district court for selecting the sentence it imposed was that the sentence was in the middle of the guidelines range, and it was the court's customary procedure to sentence in the middle. We held that this was inadequate, and that the district court's statement should have contained a discussion of factors "includ[ing] individual considerations of background, character, and conduct, as well as the systemic goals of deterrence, rehabilitation, and consistency in sentencing." Id.
 
 
 34
 We recently applied Upshaw in United States v. Wilson. There, the district court's sole explanation for its choice of sentence consisted of a recitation of the policy behind the Armed Career Criminal Act: " 'there comes a time in a person's criminal career that the person is to be exempted from society under all conditions.' " 7 F.3d at 839 (quoting the district court). We held that that explanation was insufficient, since it contained "no statement pertaining to [the defendant's] individual conduct, character, and criminal background." Id. We therefore vacated the sentence.
 
 
 35
 The government, by contrast, relies on United States v. Johnson, 953 F.2d 1167 (9th Cir.), cert. denied, 113 S.Ct. 226 (1992), where this circuit held that the district court had met the requirements of Sec. 3553(c) when it explained that the defendant had
 
 
 36
 "committed four prior robberies, each one within a short time of release on previous robberies. All this was driven by a heroin addiction the def[endan]t has not been able to master. Protection of the public requires a sentence at the statutory maximum."
 
 
 37
 Id. at 1173 (quoting the district court). As Dolores points out, however, the Johnson court's explanation is considerably more ample than that provided by the district court in this case: it touches on character, conduct, and the systemic goal of protecting the public.
 
 
 38
 Nevertheless, the explanation provided by the court in this case is qualitatively different from the explanations furnished in Upshaw and in Wilson. Here, the court did not confine its discussion to general factors (statutory policy or the court's own customary procedures), but rather focused on a particular aspect of Dolores's conduct: bribery. The reference to bribery did not, contrary to what Dolores suggests, pertain simply to "the nature of the charge for which he was being sentenced." Appellant's Opening Br. at 15. The guideline range of 235 to 293 months applied to the four narcotics charges, not to the bribery charges--which carried lower sentences. We understand the district court to have been saying that the high end of the range was appropriate because the drug crimes contained an element of bribery--and since the bribery sentences were lower than the drug sentences, and were to be served concurrently, bribery would not otherwise be reflected in the term of imprisonment.
 
 
 39
 Thus the district court did consider Dolores's conduct at a specific level. The court also considered larger systemic goals. It prefaced its factual findings with the following statement:
 
 
 40
 I don't disagree with either [the prosecutor or defense counsel] when it comes to the point with respect to the bribery aspect. Obviously, the customs inspectors who accept or the immigration inspectors who accept these bribes--and we have some that do because of the lucrative factor of drugs in our society, and particularly at our border and our location, they are corrupt. That is the word, corrupt.
 
 
 41
 They have been placed in a position of responsibility, and they have decided that they should be rewarded by wrongdoing rather [than] what they swore to uphold, and that is the law. However, those who attempt to corrupt others are just as corrupt as those who are corrupted. Those who attempt to corrupt others should know better, and consequently don't respect the laws of this country or the laws that those persons are attempting to uphold.
 
 
 42
 RT 6/28/93 at 47.
 
 
 43
 The district court did not discuss Dolores's background and character. It would have been preferable if the district court had done so. Our cases do not, however, rigorously impose a checklist against the explanation supplied by the district court. Nor does the statute dictate such an approach. Section 3553(c) requires only that the court state "the reasons" for imposition of the sentence; it does not state that each of the factors listed in Sec. 3553(a) (which include the nature of the offense, the history and characteristics of the defendant, and systemic goals) must be discussed. Although we think the district court should have provided an ampler justification for the sentence it imposed, we conclude that the justification it did provide was adequate under the law.
 
 
 44
 AFFIRMED.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The court stated as follows:
 There is no question in my mind that under 3B1.1A that Mr. Dolores was perhaps not, in Judge Brewster's words, "the kingpin," but he certainly was in the upper echelon, the supervisor, the leader, of more than five. And he is going to--there is going to be applied to him the plus 4 for the supervision. I think he is entitled to that. I think that is what happened. I don't believe for a minute anything else happened.
 RT 6/28/93 at 49.
 
 
 [2]
 Dolores suggests for the first time in his reply brief that the court erred by not making written findings, and that the district court was required to hold an evidentiary hearing on the disputed issue. We will not consider arguments raised for the first time in a reply brief